IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

SARA RITTER,                           )
                                       )
           Plaintiff,                  )
                                       )
     v.                                )          4:18-cv-02026-LSC
                                       )
ANDREW SAUL,                           )
Commissioner of                        )
Social Security,                       )
                                       )
           Defendant.                  )

**MEMORANDUM OF OPINION**

## I.    Introduction

The plaintiff, Sara Ritter, appeals from the decision of the Commissioner of

the Social Security Administration ("Commissioner") denying her applications for

Supplemental Security Income ("SSI"), a period of disability, and Disability

Insurance Benefits ("DIB"). Ritter timely pursued and exhausted her administrative

remedies and the decision of the Commissioner is ripe for review pursuant to 42

U.S.C. §§ 405(g), 1383(c)(3).

Ritter was fifty-two years old at the time of the Administrative Law Judge's

("ALJ's") decision, and she has a college degree. (Tr. at 60-61, 190.) Her past work

experiences include being a special education director and a principal. (Tr. at 76.) Ritter claims that she became disabled on February 10, 2016, due to her depression, anxiety, migraines, irritable bowel syndrome (IBS), and dysautonomia (vasodepressor syndrome). (Tr. at 59-72, 189.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding

of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ first found that Ritter meets the insured status requirements of the Social Security Act through December 31, 2021. (Tr. at 32.) She further determined that Ritter has not engaged in SGA since February 10, 2016, the alleged onset date of her disability. (*Id*.) According to the ALJ, Plaintiff's dysautonomia (vasopressor syndrome), a history of osteoporosis with a wrist fracture and rib fractures, and irritable bowel syndrome (20 C.F.R. § 404.1520(c)) are considered "severe" based on the requirements set forth in the regulations. (*Id*.) However, she found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 36.) The ALJ determined that Ritter has the following RFC:

> To lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk, with normal breaks, for a total of six hours in an eight-hour workday; sit, with normal breaks, for a total of six hours in an eight-

hour workday; pushing and pulling is the same as for lifting and carrying; she can frequently climb ramps and stairs but should never climb ladders, ropes, or scaffolds; she can occasionally balance, stoop, kneel, crouch, and crawl; she should avoid concentrated exposure to vibrations; and she should avoid all exposure to moving unguarded machinery and unprotected heights.

(Tr. at 37.)

Next, the ALJ obtained the testimony of a Vocational Expert ("VE") and determined at step four of the sequential evaluation process that Plaintiff could return to her past relevant work as a principal because this work does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. at 45.) The ALJ concluded her findings by stating that Plaintiff has not been under a "disability," as defined in the Social Security Act, from the alleged onset date through the date of the decision. (Tr. at 46.)

## II.     Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  This Court gives deference to the factual findings of the Commissioner, provided those findings are

supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881,

883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

Ritter argues that the ALJ's decision should be reversed and remanded for two reasons: (1) the ALJ erred in giving little weight to the opinion of Dr. Steve Johnson, her primary care physician, and (2) the ALJ erred in finding her not entirely credible.

### A. Weight to the Treating Physician's Opinion

The ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your

physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502.

The regulations and case law set forth a general preference for treating medical sources' opinions over those of non-treating medical sources, and non-treating medical sources over non-examining medical sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Thus, a treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (internal quotations omitted)). "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's

opinion was conclusory or inconsistent with the doctor's own medical records."

*Phillips*, 357 F.3d at 1241 (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record). In short, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1546(c).

Dr. Johnson, Plaintiff's primary care physician, has treated Ritter for several years. Specifically, Dr. Johnson testified that his oldest treatment notes for Ritter start in February 2006. (Tr. at 1163.) Dr. Johnson stated that he has treated Ritter probably 100 times since February 2006. (*Id*.) In 2015, he diagnosed her with dysautonomia (vasodepressor syndrome)[1], depression, anxiety, IBS, and migraines. (Tr. at 452, 1164-66.) Starting in 2015, Ritter alleged her conditions were progressively worsening, so she required frequent visits to Dr. Johnson. (Tr. at 57, 423-50.) Dr. Johnson noted that Ritter was taking numerous medications, some of which he prescribed, including Lexapro, Estrace, Clonazepam, Abilify, Temazepam, Tizanidine, Trazadone, Singular, Lyrtec, Centrum, and Calcium on September 28, 2015. (Tr. at 450.) From September 2015 to February 2016, Dr. Johnson treated Ritter approximately 11 times at his office for the same health issues mentioned above. (Tr. at 423-50.) On February 12, 2016, Dr. Johnson wrote a letter that advised that Ritter should be "off work indefinitely due to persistent disabling health problems." (Tr. at 420.)

Then, from February 2016 to July 2017, Ritter saw Dr. Johnson on another 22 occasions. (Tr. at 682-752.) On December 30, 2016, Dr. Johnson noted in Plaintiff's

---

[1] Dysautonomia (vasodepressor syndrome) refers to a wide range of conditions that affect the autonomic nervous system. Symptoms include fainting, cardiovascular issues, and breathing problems.

medical records that Ritter denied abdominal pain, appetite loss, change in bowel habits, constipation, and diarrhea in the gastrointestinal section. (Tr. at 720.) During the same visit, Dr. Johnson noted that Ritter denied anxiety; depression; eating disorder; insomnia; memory loss; and suicidal thoughts. (Tr. at 721.) However, Dr. Johnson diagnosed her with IBS, migraines, major depressive disorder, and anxiety. (Tr. at 722.) He prescribed Ritter several medications including Estrace, Levocetirizine, Lexapro, Midodrine, Pantoprazole, Singulair, and Trazodone. (Tr. at 722-23.)

On another visit on February 1, 2017, Ritter again denied abdominal pain, change in bowel habits, constipation, diarrhea, and appetite loss to Dr. Johnson. (Tr. at 724.) Ritter also denied anxiety, depression, eating disorder, insomnia, memory loss, and suicidal thoughts to Dr. Johnson at that visit. (Tr. at 725.) During this visit, Dr. Johnson still diagnosed Ritter with major depressive disorder and IBS. (Tr. at 726.) Simultaneously, Dr. Johnson noted that her depression will improve as "she sorts through [her] divorce proceeding and continues to heal from the loss of her mother and the death of her co-worker." (Tr. at 725.) In addition, he noted under his impressions of Ritter's IBS that there is "no fever, bleeding, or other signs or symptoms to suggest inflammatory bowel disease. Extensive workups in the past have been negative." (*Id*.)

On July 31, 2017, Ritter saw Dr. Johnson for another visit. (Tr. at 746.) Dr. Johnson diagnosed Ritter with an anxiety disorder, IBS, and migraines. (Tr. at 747.) Notably, Dr. Johnson did not diagnose her with depression at this visit. (*Id*.) He noted that Ritter "seem[ed] a bit more upbeat today. Not hopeless. Sleeping better." (*Id*.) Dr. Johnson also noted that Ritter was "deeply tanned" and had "normal bowel sounds." (*Id*.)

The ALJ gave no weight to the opinions of Dr. Johnson that Ritter is "disabled" and little weight to the sworn statement of Dr. Johnson because his opinions conflicted with his treatment notes and were not otherwise consistent with the other medical evidence of the record. (Tr. at 42-44, 420, 740, 746, 1172.) The ALJ had good cause to do so and articulated her reasons in detail. (Tr. at 42-44.) Specifically, the ALJ provided thorough analysis for her decision supported by substantial evidence in the record. (*Id.*)

First, the ALJ determined that Dr. Johnson's opinion that Ritter was disabled should receive no weight. (Tr. at 42, 420, 682-752, 1172.) This was because the ALJ found Dr. Johnson's opinions that Ritter should be "off work indefinitely," is "disabled," and "can't work" were conclusory statements unsupported by the objective medical evidence. (Tr. at 42-44, 420, 740, 746, 1172.) *See Crawford*, 363 F.3d at 1159 (holding that a "treating physician's report 'may be discounted when

it is not accompanied by objective medical evidence or is wholly conclusory'"); *see also Bell v. Bowen,* 796 F.2d 1350, 1353 (11th Cir. 1986) (finding that assigning no weight to treating physician's conclusion that claimant was "totally disabled" was proper because the physician never discussed how the claimant's condition prevented him from performing sedentary work activities or his past work activities). Here, the ALJ pointed out that Dr. Johnson identified no objective medical evidence to support his statements that Ritter should not work. (Tr. at 43, 420.) In addition, conclusions regarding whether a claimant is "disabled" or unable to work concern issues specifically reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d).

The ALJ also highlighted that the characterization of Ritter as "disabled" first appeared in Dr. Johnson's treatment records after Ritter received notice about her scheduled SSA hearing and was not associated with any change or worsening of her longstanding conditions. (Tr. at 43, 740, 746.) In fact, the only change to her longstanding conditions was a diagnosis of a multiple rib fracture as well as evidence for an old healing fracture. (Tr. at 43, 740.) Furthermore, Dr. Johnson noted that she was "improving a good bit" from her rib fracture by July 2017. (Tr. at 746.) Thus, the ALJ concluded that there was no objective medical evidence that

supported describing Ritter as "disabled" beginning in the June 2017 records. (Tr. at 43, 740, 746.)

Moreover, the ALJ noted that none of the specialists Ritter has seen for evaluation and/or treatment has placed work or functional limitations on her as a result of her conditions. (Tr. at 43.) For instance, on December 9, 2015, Dr. Ralph Lyerly, M.D., Ritter's gastroenterologist, determined that she had no abdominal tenderness and a normal pattern of bowel sounds. (Tr. at 409.) He further noted that Ritter had a "somewhat bothersome amount of inquiry about additional pain medicines." (Tr. at 410.) Dr. Lyerly did not mention that Ritter's condition limited her ability to function. (Tr. at 406-12.)

Similarly, on January 18, 2016, Dr. Hutton Brantley, M.D., a treating cardiologist, noted that Ritter's physical examination was unremarkable. (Tr. at 418.) Dr. Johnson referred Ritter to Dr. Brantley for syncope and hypotension. (Tr. at 416.) Ritter reported to Dr. Brantley that she feels well with minor complaints. (*Id.*) Dr. Brantley further noted that Ritter was taking Midodrine for her syncope, which had significantly improved her quality of life. (Tr. at 418.) In addition, Dr. Brantley stated that it was safe for Ritter to resume her exercise regimen. (*Id*.) There was no mention that Ritter had any work or functional limitations as a result of her conditions. (Tr. at 413-19.)

Likewise, from October 14, 2016 to August 1, 2017, Ritter saw Dr. Deborah Kerr, a psychologist, to receive therapy for her mental impairments. (Tr. at 1145-52.) Dr. Kerr noted during the eight therapy sessions over the course of nearly a year that Ritter was "making progress" at every visit. (Tr. at 1145-52.) Notably, Dr. Kerr no longer diagnosed Ritter with depression in August 2017 and stated that her panic disorder was in partial remission. (Tr. at 1152.) Lastly, Dr. Kerr did not mention that Ritter had any work or functional limitations as a result of her conditions. (Tr. at 1145-52.)

Then, in August 2017, Dr. Johnson provided a sworn statement that the ALJ assigned little weight to because it lacked detail, and conflicted with other evidence in the record, including Dr. Johnson's own notes. (Tr. at 43-44, 1153-74.) *See* 20 C.F.R. § 404.1527(c)(3). First, the ALJ noted that Dr. Johnson's sworn statement about Ritter's mental functioning conflicts with the treating psychologist's records as previously discussed. (Tr. at 43.) Furthermore, Dr. Johnson's sworn statement found that Ritter was suffering from depression in August 2017. (Tr. at 1166.)

The ALJ also found that Dr. Johnson's sworn statement conflicted with his own medical records, where he noted that Ritter denied depression and anxiety on multiple occasions. (Tr. at 44, 532, 721, 725, 729, 733, 737, 740, 743, 747.) While Dr. Johnson did not have access to Dr. Kerr's records at the time of his sworn

statement, the inconsistency with his own medical notes as well as the treating psychologist's notes supports the ALJ's decision to assign little weight to Dr. Johnson's sworn statement. *See Edwards*, 937 F.2d at 583-84 (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

Second, the ALJ noted that Dr. Johnson did not provide any details about Ritter's specific symptoms of dysautonomia, such as their frequency, duration, or severity, in his sworn statement, but simply provided general information about the symptoms of dysautonomia. (Tr. at 1164-65.) *See* CF.R. § 404.1527(c)(3) (greater weight will be assigned to medical opinions that present relevant evidence to support a medical opinion, particularly medical signs and laboratory findings).

Third, the ALJ noted that Dr. Johnson's sworn statement described Ritter's IBS as episodic, but again, it did not discuss the frequency or duration of Ritter's symptoms. (Tr. at 43, 1165.) Additionally, Dr. Johnson's discussion of IBS in his sworn statement was not limited to the period at issue, as the ALJ points out. (Tr. at 43-44, 1165.) Dr. Johnson referenced Ritter's hospitalizations for IBS in August and September 2015. (Tr. at 44, 280-405, 1165.) Additionally, Dr. Johnson's own medical records between December 2016 and July 2017 note that Ritter denied changes in abdominal pain, appetite loss, changes in bowel habits, constipation,

diarrhea, dysphagia, flatulence, heartburn, hematemesis, hemorrhoids, melena, and nausea/vomiting all in relation to her IBS. (Tr. at 720, 724, 728, 732, 736, 739, and 743.)

Fourth, Dr. Johnson also stated that Ritter had disruptive migraines but that they were under better control. (Tr. at 44, 1168.) Again, the ALJ points out that Dr. Johnson's testimony about Ritter's migraines is inconsistent with his own medical records, where he noted Ritter's headaches were stable. (Tr. at 44, 729, 737, 747.)

Fifth, Dr. Johnson stated that Ritter had "lost her ability to cope." (Tr. at 1172.) However, as the ALJ notes, Dr. Kerr's records are contrary to Dr. Johnson's statement. (Tr. at 44.) Dr. Kerr's records showed that Ritter was coping with independent living, progressing well, that her mental impairments were in partial remission, and after February 2017, no longer listed depression as a diagnosis. (Tr. at 1145-52.)

Ritter's self-reported activities in Dr. Johnson's own records also contradict his statement about Ritter's inability to cope. (Tr. at 44.) For instance, on March 30, 2017, Dr. Johnson noted Ritter's activities included moving into a new condo, walking her dog, going to the exercise room, shopping, and trying to lead a normal life. (Tr. at 729.) A second inconsistent statement between Dr. Johnson's testimony and his own medical notes is from Ritter's May 4, 2017, visit, where he noted that

Ritter was dating, was more confident about her life, was redoing her new condo in an upscale living community, and was spending time walking her dog, at the pool, reading, and going to the fitness center. (Tr. at 733.) These medical notes by Dr. Johnson also corroborate her outdoor activities, such that he stated Ritter is "extremely tanned" at visits. (Tr. at 44, 737.) There is also other evidence in the record that contradicts Dr. Johnson's statement that Ritter cannot cope, such as medical records from Dr. Alan McCool, Plaintiff's treating urologist, from September 2016 describing Ritter "spending a lot of time at the beach and is overall very happy." (Tr. at 44, 532.) *See Phillips,* 357 F.3d at 1241 (upholding an ALJ's rejection of a treating physician's opinion where ALJ reasoned the opinion conflicted with the physician's treatment notes and the claimant's daily activities).

Lastly, the ALJ assigned no weight to Dr. Johnson's statement that Ritter "can't work." (Tr. at 44, 1172.) The ALJ noted that Dr. Johnson's testimony is broad, conclusory, and not supported by pointing to any specific symptoms or functional limitations. (Tr. 44, 1172.) *See Moore v. Barnhart,* 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("[T]he mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard."). Substantial evidence provided in detail supports the ALJ's decision to assign no weight to Dr. Johnson's opinions and little weight to his sworn statement.

*See Crawford,* 363 F.3d at 1158-59 ("Even if the evidence preponderates against the Commissioner's findings, [the Court] must affirm if the decision is supported by substantial evidence."). Thus, the evidence in the record does not support Dr. Johnson's opinions, and his own records contract his opinions and testimony. Therefore, the ALJ had good cause to assign little to no weight to Dr. Johnson's opinions and sworn statement testimony.

### B. Credibility Determination

When a claimant attempts to prove disability based on her subjective complaints, she must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of her alleged symptoms or evidence establishing that her medical condition could be reasonably expected to give rise to her alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b); Social Security Ruling ("SSR") 16-3p; *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes she has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on the claimant's ability to work. *See* 20 C.F.R. §§ 404.1529(c), (d); 416.929 (c), (d); SSR 16-3p; *Wilson*, 284 F.3d at 1225-26. In

determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether the ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Here, Ritter testified at her hearing that she experienced weight loss of 30-40 pounds, which led her to retire from her job in April 2016 because of anxiety, depression, and stress. (Tr. at 60-61.) She went on to testify that she had issues with fainting due to low heart rate, low blood pressure drops, foggy headedness, inability to concentrate, and inability to deal with her varied job duties. (Tr. at 63.) Ritter also testified that her health problems worsened in late 2014, namely her depression, anxiety, panic attacks, and social phobia. (Tr. at 68-69.) Moreover, Ritter testified that the worsening of her mental health issues from the stresses of her promotion exacerbated her dysautonomia episodes. (Tr. at 70.) Ritter also testified that she has had IBS for five years and it worsened the last three years. (Tr. at 71.) Lastly, Ritter stated that she experiences migraines that are stress triggered. (Tr. at 71-72.)

As explained below, substantial evidence supports the ALJ's determination that Ritter's statements regarding the intensity, persistence, and functionally limiting effects of her alleged pain and other symptoms were not entirely

consistent with the medical evidence and other evidence in the record, for the reasons the ALJ explained in the decision. The ALJ first acknowledged that, with regard to Plaintiff's anxiety, depression, and stress, the objective evidence of record showed that Plaintiff had been in therapy and making routine progress between October 2016 and August 2017. (Tr. at 33, 1145-52.) Dr. Kerr, Plaintiff's treating psychologist, assessed Ritter's depression as single-episode-in-partial-remission in October 2016 and no longer listed it in Ritter's treatment notes after the February 2017 visit. (*Id*.) The ALJ noted that Ritter's depression and anxiety were predominately related to the stressors of her failing marriage at the time, two recent deaths of individuals close to her, and her retirement. (*Id*.)

Furthermore, the ALJ noted that Ritter's therapy homework included reading books and articles about relationships to develop her coping skills; identifying personal values and goals to improve her independence, interpersonal effectiveness skills, and supportive empowerment techniques; and addressing her interpersonal difficulties with codependency and her spouse's controlling behavior, which all helped her to make progress. (*Id*.) In addition, the ALJ noted that Ritter repeatedly participated in and reported benefit from therapy, and Dr. Kerr reported improvement in her mood, health, psychosocial stressors, and in her sleeping, eating, and exercising habits. (*Id*.) Ritter also noted good relations with

her sister, personal growth, and the development of new relationships, included dating. (*Id*.) Lastly, the ALJ noted that Dr. Kerr never diagnosed severe or uncontrolled mental health symptoms that placed limitations on Ritter's ability to work. (*Id*.)

With respect to Ritter's claimed symptoms of fainting due to low heart rate, low blood pressure drops, foggy headedness, inability to concentrate, and inability to deal with her varied job duties, the ALJ noted that Ritter was diagnosed with vasodepressor syndrome in approximately 2015 and had sought treatment with a cardiologist. (Tr. at 39, 521-30.) The ALJ also noted that Dr. Brantley, Plaintiff's treating cardiologist, described Ritter's neurologic and cardiac workup as negative with no history of hypertension. (Tr. at 39, 521-30.) Furthermore, the ALJ mentioned that Ritter began to use Midodrine to address her vasodepressor syndrome. (Tr. at 39, 521-30.) During a follow-up visit on January 18, 2016, Ritter stated her symptoms were "completely resolved" with Midodrine use. (Tr. at 39, 416.) Dr. Brantley noted that Ritter felt much better, had significant improvement in heart rate and blood pressure, and she denied any passing out episodes since. (Tr. at 39, 413-19.)

As for Ritter's testimony that she suffers from IBS, the ALJ noted that it has been "managed conservatively" and that there have not been flare ups of the

frequency or duration that interfere with her ability to work. (Tr. at 40, 524.) *See* 20 C.F.R. § 404.1529(c)(3)(v), (v)(i); *Wolfe v. Chater,* 86 F.3d 1072, 1078 (11th Cir. 1996) (affirming ALJ's discrediting of claimant's subjective complaints where ALJ reasoned that claimant's treatment was conservative). The ALJ highlighted that Ritter has not been back to see her gastroenterologist since 2015, but has only seen her primary care physician, Dr. Johnson, through 2017 in regard to her IBS. (Tr. at 41, 720-48.) In February 2017, Dr. Johnson noted no fever, bleeding, or other signs or symptoms to suggest IBS, and he said that an extensive workup in the past has been negative for IBS. (Tr. at 41, 725.) Furthermore, the ALJ noted that Dr. Johnson diagnosed Ritter's IBS as stable on medication, describing no issues with the daily use of maintenance medication in May 2017. (Tr. at 41, 733-34.)

Ritter's testimony that she suffers from migraines is inconsistent with the medical evidence and records as well. Ritter denied having headaches on multiple visits with Dr. Johnson between December 2016 and June 2017. (Tr. at 39, 720, 725, 729, 733, 737, 740, 743.) Moreover, the ALJ noted that Dr. Johnson diagnosed Ritter's migraines as stable at her July 31, 2017 visit. (Tr. at 39, 747.)

Finally, in discrediting Ritter, the ALJ considered imaging, diagnostic tests, and other unremarkable physical examination findings, including those of Dr. Dallas Russell, a one-time physical examiner, which revealed normal gait, station, and

strength. (Tr. at 39-40, 464-65, 467-68, 524-27, 548-49, 555-56, 575, 579, 613, 616, 620, 624.) The ALJ noted Ritter's medical records with Dr. Johnson document her repeated denial of dizziness, presyncope, syncope, vertigo, or falls. (Tr. at 40, 720, 725, 729, 733, 737, 740.) Thus, the ALJ identified several inconsistencies between Ritter's testimony as to her symptoms and the objective medical evidence and records. (Tr. at 39.) *See* C.F.R. § 404.1529(c)(4) (noting that in evaluating a claimant's subjective statements, consideration is also given to any conflicts between the claimant's statements and the rest of the evidence).

In sum, the ALJ articulated her reasons in great detail for finding that Ritter's subjective complaints are inconsistent with the medical evidence and record. (Tr. at 38-42.) Substantial evidence supports the ALJ's determination to reject Ritter's testimony.

## IV.   Conclusion

Upon review of the administrative record, and considering all of Ritter's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** on March 17, 2020.

_____
L. Scott Coogler
United States District Judge

201416